Filed 6/19/13  P. v. Lilly-Freeman CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G046686 |
| v. | (Super. Ct. No. 09WF1703) |
| LASHAWN LANETTE LILLY-FREEMAN et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from a judgment of the Superior Court of Orange County, Dan McNerney, Judge.  Affirmed.

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant, LaShawn Lanette Lilly-Freeman.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant, Latoya Janae Lilly.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

LaShawn Lanette Lilly-Freeman (Lilly-Freeman) and Latoya Janae Lilly (Lilly) appeal from judgments after a jury convicted them of two counts of second degree robbery and found true firearm enhancements. They argue their Sixth Amendment confrontation clause rights were violated, and Lilly argues the prosecutor committed misconduct. None of their claims have merit, and we affirm the judgments.

FACTS

Arnaldo Esparza, Salvador De La Torre, and Demarcus Asberry were working at Pep Boys in Garden Grove one summer Sunday. At closing time, they set the alarm, closed the store, and waited as Asberry, the manager on duty, locked the store; Esparza's attention was drawn to a suspicious gray van parked awkwardly in the lot.

As they stood outside, an African-American woman, later identified as Lilly-Freeman, dressed in black and wearing a wig approached the men. Lilly-Freeman told them to go back inside the store because she was going to rob the store. When the men did not take her seriously, Lilly-Freeman took a gun from her purse and pointed it at De La Torre. Lilly-Freeman followed the three men as they all walked upstairs to the office where the safe was located. Asberry opened the safe, and Lilly-Freeman told De La Torre to give her the money, which he did. The store's alarm went off. Lilly-Freeman grabbed her purse and the money, and ran out of the store.

Esparza and De La Torre followed, and as they reached the front door, they saw the van pull up. Lilly-Freeman got into the passenger side, and the van's driver, later identified as Lilly, Lilly-Freeman's sister, sped away. They recorded the van's license plate number and called 911.

Officer James Franks was on patrol when he received a dispatch to be on alert for a gray van with a specific license plate number. Within minutes he spotted the van and followed it until other officers arrived. Franks initiated a vehicle stop. Lilly was driving the van, and Lilly-Freeman was in the passenger seat.[1] Lilly gave the police a false name, address, and date of birth. Officers found two wigs, sunglasses, and a diaper bag; inside the diaper bag was a purse with $2,096.41. A female officer searched Lilly-Freeman and found a gun between her legs. At an in-field lineup, Esparza and De La Torre identified Lilly-Freeman as the trigger woman, and Esparza identified Lilly as the driver. Asberry could not identify anyone, which as it turns out was not a surprise as there was evidence he and Lilly were high school classmates and they may have been in an amorous relationship at the time of the stickup.

At the police station, Franks interviewed Lilly, after advising her of her rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436. Lilly stated Lilly-Freeman is her sister, she lived in Carson, and they went to Orange County to shop. Lilly claimed she and her sister had just left a gas station in Long Beach when they stopped to give a beggar man some money. She stated the man opened the van door, got in, pointed a gun at them, and told her to drive. Lilly said that when they arrived at the Pep Boys, Lilly-Freeman went inside for a few minutes, and when she returned to the van, Lilly drove away. Lilly stated that when the officer pulled them over, the man got out of the van and fled, leaving the gun and the money behind.

Franks also advised Lilly-Freeman of her *Miranda* rights and interviewed her at the police station. She told the same story as her sister. Lilly-Freeman stated she and her sister had just left a gas station in Long Beach when they stopped to give a Hispanic man some money. She claimed the man got inside the van, pointed a gun at

---

[1] Lilly-Freeman's child was also in the van, but the trial court excluded this evidence.

them, told Lilly to drive to a Pep Boys, and told her to rob the Pep Boys. She added though that the man gave her the gun to rob the Pep Boys. After she committed the robbery, she got back into the van and they drove until an officer stopped them.

An information charged Lilly-Freeman and Lilly with two counts of second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c)), and alleged Lilly-Freeman personally used a firearm (Pen. Code, § 12022.53, subd. (b), and Lilly was armed with a firearm (Pen. Code, § 12022, subd. (a)(1)).

Before trial, the prosecutor moved to admit Lilly's and Lilly-Freeman's statements. The prosecutor argued it was not offering the statements for their truth. Instead, the prosecutor asserted it was offering the statements for their untruthfulness. The prosecutor claimed the statements were circumstantial evidence of a conspiracy and preconceived plan to commit the robbery and thus demonstrated consciousness of guilt.

At the hearing on the motion, the trial court inquired whether the prosecutor sought to introduce the statements not for their truth but instead for their falsity. The prosecutor agreed.

Lilly's defense counsel objected to admission of Lilly-Freeman's statements on federal and state due process grounds. Relying on *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*), Lilly suggested the prosecutor confused a confrontation clause analysis with a hearsay analysis. Lilly argued Lilly-Freeman's statements were testimonial, as they were the result of a police interrogation, and thus to be admitted, Lilly-Freeman must be unavailable to testify and Lilly must have had the prior opportunity to cross-examine her. Lilly added that the possibility Lilly-Freeman's statements might be inconsistent with the prosecutor's theory of the case does not make her statements false. Lilly-Freeman's defense counsel joined in Lilly's arguments and objected to admission of Lilly's statements.

4

The prosecutor responded the statements were not testimonial because they were nonhearsay, i.e., they were being offered for their falsity and not for their truth. The prosecutor added that the confrontation clause does not prohibit the use of testimonial statements for purposes other than establishing the truth of the matter asserted.

The trial court ruled Lilly-Freeman's and Lilly's statements were admissible. The court explained that the fact their statements were the result of police interrogation does not make their statements testimonial as it appeared to the court that *Crawford* and its progeny was concerned with "traditional hearsay statements." It did not appear to the court "testimonial statements" as defined by *Crawford* and its progeny included statements being offered for a nonhearsay purpose. Based on *Crawford*, the court opined the confrontation clause only required the exclusion of statements offered for the truth of the matter asserted. The court reasoned: "It's pretty clear that the [prosecutor] is seeking to offer the statements made by the defendants to the police by the mysterious Hispanic gentleman who orchestrated this robbery not for their truth, but to demonstrate two things, first of all, the existence of a conspiracy, and secondly, to demonstrate the consciousness of guilt by the alleged falsehood of those statements. I don't know that the possibility that the statements actually are true prohibits the prosecution from pursuing that theory, and, further, I don't find that the defendants are in any way prejudiced by the inadmissibility [verbatim] of those statements because these statements are entirely exculpatory."

At trial, Franks testified that when he pulled over the van, he did not see anyone flee the van. Lilly-Freeman argued she was guilty of the lesser included offense of larceny and not robbery because De La Torre and Esparza were co-conspirators and were not in fear. Lilly contended she was not guilty of robbery because she did not know Lilly-Freeman intended to rob the Pep Boys.

5

During closing argument, the prosecutor stated that after defense counsel presented their closing arguments, the prosecutor would have an opportunity to present rebuttal argument. The prosecutor stated: "[Lilly-Freeman's defense counsel] is going to get up here. I suspect we will hear more about his wife and kids. [Lilly's defense counsel] I suspect he will talk to you for about two hours. During those two hours I suspect we are going to hear a lot of stories. Might get to hear about some family comic book figures, might get to hear about magic tricks, might get to hear about Abe Lincoln, might get to hear about his wife and kids, too. So we will have a lot of time to listen to all of that. [¶] At the end, I'm going to get back up and I'm going to respond to the arguments that they make. I promise to try to keep it as focused as possible. Not to drag on. I will not go another hour or two after no matter how long they talk for. But during their arguments, ask yourself is this reasonable and ask yourself is this being used to help me determine the facts or is this being used to mislead me. And we will talk, I'm sure, a lot about what counsel meant to be misleading. Keep that in mind as you're listening to these stories and you're listening to the arguments." The trial court overruled Lilly's defense counsel's objection and denied his request for an admonition.

During rebuttal, the prosecutor stated: "Now, [Lilly's defense counsel] got up here and told you a story and said, my son said, Dad, I'm like a super hero. [Lilly's defense counsel] tried to show a false modesty for a second and said, I'm not a super hero, but I can tell a lie. Well, he gets up here and he talks about the American justice system and how it is the best in the world. What do we need it for? Just put everyone up in front of [Lilly's defense counsel]. Let him make the determination about what is right. No, you are the ones that make the determination and his questions, no matter how pointed they are, aren't in evidence and they don't suggest anything. And I will get into some very significant details of what that means as we go along." After a brief sidebar discussion, the prosecutor continued: "The purpose of a lot of these arguments it's what

6

counsel does is very purposeful. It's basically - - it's meant to have you focus in on certain little issues to get distracted from the big picture and that's the purpose of it." The trial court again overruled Lilly's defense counsel's objection.

The jury convicted Lilly-Freeman and Lilly of both counts and found true the firearm allegations. The trial court sentenced Lilly-Freeman to 12 years in prison. The trial court sentenced Lilly to two years in prison.

DISCUSSION

I. *Confrontation Clause*

Lilly-Freeman and Lilly argue the trial court erred in admitting their statements in violation of the Sixth Amendment's confrontation clause as interpreted in *Crawford, supra,* 541 U.S. 36. We disagree.

In *Crawford, supra,* 541 U.S. at page 59, the Supreme Court of the United States held a testimonial statement from a witness who does not appear at trial is inadmissible against the accused unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness. But this rule only applies to testimonial statements that were introduced to establish the truth of the matter asserted. (*Ibid*.; accord, *Davis v. Washington* (2006) 547 U.S. 813, 823 [confrontation clause applies only to testimonial hearsay].) As *Crawford* acknowledges, when an out-of-court statement is introduced not for the truth of the matter asserted but for some other nonhearsay purpose, the confrontation clause is not implicated. (*Crawford, supra,* 541 U.S. at p. 59, fn. 9 ["The [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted"].)

In *People v. Cage* (2007) 40 Cal.4th 965 (*Cage*), our California Supreme Court noted *Crawford* is concerned only with out-of-court statements offered for their truth. The *Cage* court stated: "*Crawford* made clear that there are no confrontation

7

clause restrictions on the introduction of out-of-court statements for *nonhearsay* purposes.  As *Crawford* confirmed, '[t]he [Confrontation] Clause does not bar the use of [out-of-court] statements for purposes other than establishing the truth of the matter asserted.'  [Citations.]" (*Id.* at pp. 975, fn. 6, 985.)  We review de novo the admissibility of evidence under the Sixth Amendment Confrontation Clause.  (*Lilly v. Virginia* (1999) 527 U.S. 116, 136.)

Here, the trial court properly admitted Lilly-Freeman's and Lilly's statements as their admission did not violate Lilly-Freeman's and Lilly's confrontation rights as interpreted in *Crawford*.  *Crawford*, *Cage*, and subsequent cases have made it clear that a defendant's confrontation clause rights are not implicated when evidence is admitted for a nonhearsay purpose, i.e., evidence is offered not to prove the truth of the matter asserted but for some other purpose.

In *People v. Mitchell* (2005) 131 Cal.App.4th 1210, 1216-1217 (*Mitchell*), police officers responded to a robbery call and their response was recorded.  The trial court allowed the prosecutor to present the tape as evidence at trial.  (*Id.* at pp. 1218-1219.)  On appeal, defendant argued admission of the tape violated his confrontation rights under *Crawford*.  (*Id.* at p. 1220.)  After explaining the majority of the statements on the tape were those of the officers who were subject to cross-examination, the court addressed the remaining statements.  (*Id.* at p. 1224.)  The court stated the majority of those statements were not offered to prove the truth of the matter asserted.  (*Ibid.*)  The court opined those statements were offered for a nonhearsay purpose, i.e., to establish how the police pursuit developed and to describe the officers' conduct.  (*Ibid.*)  The court opined:  "Because the vast majority of the tape was not offered to establish the truth of the matter asserted, much of the tape is not hearsay at all. As nonhearsay, and therefore nontestimonial evidence, a great portion of the police dispatch tape is not subject to the analysis in *Crawford*.  The Court in *Crawford* noted the

8

confrontation clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" (*Id.* at pp. 1224-1225, fns. omitted; *People v. Cooper* (2007) 148 Cal.App.4th 731, 744 (Cooper) [defendant's videotaped interview with law enforcement properly admitted not for truth of matter asserted but as evidence of victim's mental state].)

Like in *Mitchell* and *Cooper*, here Lilly-Freeman's and Lilly's statements were not offered for the truth of the matter asserted. Their statements were offered for a nonhearsay purpose. The prosecutor offered the statements because they were untruthful and circumstantial evidence of a conspiracy and a preconceived plan to rob the Pep Boys. Admission of the statements was proper and did not implicate Lilly-Freeman's and Lilly's confrontation rights because they were admitted for a nonhearsay purpose.

In any event, admission of their statements was harmless beyond a reasonable doubt. (*People v. Livingston* (2012) 53 Cal.4th 1145, 1159.) Eyewitnesses identified Lilly-Freeman as the woman with the gun and Lilly as the driver of the van. And Franks did not see anyone flee the van when he initiated the traffic stop. When officers searched the van, they found over $2,000 in cash, and Lilly-Freeman was hiding a gun between her legs. Thus, there was overwhelming evidence of their guilt.

Lilly-Freeman and Lilly rely on *Bullcoming v. New Mexico* (2011) ___ U.S. ___ [131 S.Ct. 2705] (*Bullcoming*), *Melendez-Diaz v. Massachusetts* (2009) 557 U.S. 305 (*Melendez-Diaz*), *People v. Parrish* (2007) 152 Cal.App.4th 263 (*Parrish*), and *U.S. v. Meises* (1st Cir. 2011) 645 F.3d 5 (*Meises*), to argue admission of their statements violated their rights under the confrontation clause. Their reliance on those cases is misplaced.

9

In the two cases from the highest court in the land, the evidence was offered for the truth of the matter asserted. (*Bullcoming, supra,* ___ U.S. ___ [131 S.Ct. at p. 2717] [laboratory report admitted to prove defendant's blood-alcohol level]; *Melendez-Diaz, supra,* 557 U.S. at p. 310 [certificates admitted to prove substance defendants possessed was cocaine].) *Parrish, supra,* 152 Cal.App.4th 263, 274-276, is inapposite as that case involved the interplay between *Crawford* and Evidence Code section 356, when the prosecutor moved to admit portions of defendant's interview with police after defendant introduced portions of the same interview. That is not the issue we are faced with here. Finally, we are not bound by a lower federal court decision on federal questions (*People v. Gray* (2005) 37 Cal.4th 168, 226), and in *Meises, supra,* 645 F.3d at page 21, the evidence was offered for the truth of the matter asserted, i.e., a co-conspirator's out-of-court statement defendant was involved in the drug deal. Thus, Lilly-Freeman's and Lilly's confrontation rights were not infringed by admission of their out-of-court statements to Franks.

II. *Prosecutorial Misconduct*

Lilly contends the prosecutor committed prejudicial misconduct when she denigrated her defense counsel. We disagree.

"""""A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.'"" [Citation.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves ""'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.'"" [Citation.]" (*People v. Ayala* (2000) 23 Cal.4th 225, 283-284.)

"It is generally improper for the prosecutor to accuse defense counsel of fabricating a defense [citations], or to imply that counsel is free to deceive the jury [citations]. Such attacks on counsel's credibility risk focusing the jury's attention on irrelevant matters and diverting the prosecution from its proper role of commenting on the evidence and drawing reasonable inferences therefrom. [Citations.] [¶] Nevertheless, the prosecutor has wide latitude in describing the deficiencies in opposing counsel's tactics and factual account. [Citations.] In so doing, the prosecutor may highlight the discrepancies between counsel's opening statement and the evidence. [Citation.] Misconduct claims also have been rejected where the prosecutor anticipates the flaws likely to appear in counsel's closing argument based on evidence that was introduced [citation], and where the prosecutor criticizes the defense theory of the case because it lacks evidentiary support [citation]." (*People v. Bemore* (2000) 22 Cal.4th 809, 846-847.) "When the prosecution denigrates defense counsel, there is a risk the jury will shift its attention from the evidence to the alleged defense improprieties. [Citations.]" (*People v. Cash* (2002) 28 Cal.4th 703, 732-733.)

*People v. Cunningham* (2001) 25 Cal.4th 926 (*Cunningham*), in instructive. In that case, the prosecutor stated about defense counsel: "'They are extremely fine. And what is their job? Their job is to create straw men. Their job is to put up smoke, red herrings. And they have done a heck of a good job. And my job is to straighten that out and show you where the truth lies. So let's do that.'" (*Id.* at p. 1002.) The court cited to its previous case, *People v. Marquez* (1992) 1 Cal.4th 553, 575-576 (*Marquez*), where the court "determined that the prosecutor's comments, that a '"heavy, heavy smokescreen has been laid down [by the defense] to hide the truth from you,"' constituted a proper argument in response to the defense presented." (*Cunningham, supra,* 25 Cal.4th at p. 1002.) The court also cited to its previous case *People v. Cummings* (1993) 4 Cal.4th 1233, 1302 (*Cummings*), where the court "concluded that a prosecutor's argument

11

accusing the defense of attempting to hide the truth, and his argument employing an 'ink from an octopus' metaphor, would be understood as nothing more than urging the jury not to be misled by the evidence." (*Cunningham, supra,* 25 Cal.4th at pp. 1002-1003.) The *Cunningham* court concluded there was not a reasonable likelihood the jury was improperly influenced by the prosecutor's remarks. (*Id.* at p. 1002.) The court concluded the prosecutor's remarks "would be understood by the jury as an admonition not to be misled by the defense interpretation of the evidence, rather than as a personal attack on defense counsel." (*Id.* at p. 1003.)

Here, we agree the prosecutor's comments suggesting defense counsel would attempt to mislead the jury were improper. Although it is permissible for the prosecutor to urge the jury to ask themselves whether defense counsel's interpretation of the evidence is reasonable and urge the jury not to be misled by the evidence, the prosecutor cannot attack defense counsel personally by accusing defense counsel of intentionally misleading the jury. For example, the prosecutor's statement the jury should evaluate defense counsel's argument to determine whether it was reasonable and whether it assisted the jury in determining the facts was permissible. But the prosecutor's statements defense counsel tried to mislead the jury with their arguments were improper. Unlike *Cunningham*, *Marquez*, and *Cummings*, the prosecutor did not urge the jury not to be misled by defense counsel's interpretation of the evidence, but instead accused defense counsel of intentionally misleading the jury. Those statements were improper.

Additionally, although Lilly did not complain about the statements, the prosecutor also improperly ridiculed defense counsel. There was no need for the prosecutor to personally ridicule defense counsel by mentioning defense counsel's family or questioning his level of sincerity. These comments did nothing to aid the jury in evaluating the evidence.

12

Although we agree the prosecutor's comments were improper, we nonetheless find they were harmless beyond a reasonable doubt. (*People v. Livingston* (2012) 53 Cal.4th 1145, 1159.) As we explain above, eyewitnesses identified Lilly as the van's driver, and Franks did not see anyone flee the van. When officers searched the van, they found over $2,000 in cash. Therefore, there was overwhelming evidence of Lilly's guilt.

## DISPOSITION

The judgment is affirmed.


O'LEARY, P. J.

WE CONCUR:


MOORE, J.


ARONSON, J.